UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ANDRES AGUIAR, Plaintiff | CIVIL ACTION NO. 1:18-CV-235-P |
| VERSUS | JUDGE DEE D. DRELL |
| M.A. STANCIL, ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

Before the Court is a complaint filed by pro se Plaintiff Andres Aguiar (#37249-053) ("Aguiar"), pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics.[1]  The case was transferred to this Court from the United States District Court for the District of Columbia.  (Doc. 9).  Aguiar is an inmate in the custody of the Bureau of Prisons ("BOP"), incarcerated at the United States Penitentiary—Victorville in Adelanto, California.  Aguiar complains that his constitutional rights were violated while he was incarcerated at the United States Penitentiary in Pollock, Louisiana ("USP-Pollock").

Because Aguiar fails to state a claim for which relief can be granted, his complaint should be dismissed.

---

[1] In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C. § 1983.

I. <u>Background</u>

Aguiar complains that Defendants "illegally confiscated" legal documents—including a lawsuit and a letter to a Congressman—and interfered with his access to the courts and the administrative grievance procedure. (Doc. 1, p. 7). Aguiar alleges that he was placed in segregation so Defendants could conceal their wrongdoings. (Doc. 1, p. 11). Aguiar claims that, while in segregation, he was denied certain personal property that he was authorized to possess pursuant to prison regulations. (Doc. 1, p. 11).

Specifically, Aguiar complains that he prepared a civil suit against the Department of Justice to compel them to investigate and prosecute the Warden and over 15 staff members for violating numerous criminal statutes. (Doc. 1, p. 12). Aguiar also prepared a detailed letter to Congressman Trey Gowdy, detailing staff misconduct and mismanagement of the prison education and recreation programs. (Doc. 1, p. 12). The letter also contained a copy of a social media petition that Aguiar wanted to have posted online to garner support for his cause. (Doc. 1, p. 13).

Aguiar alleges that someone "tipped off the higher-ups" about what Aguiar was drafting. On August 4, 2017, Aguiar received a disciplinary report for violating a prison rule that prohibits inmates from mailing a letter through a third party. (Doc. 1, p. 15). Aguiar states that he admitted the rule violation and explained to Mr. P. Scarber why he violated the rule. (Doc. 1, p. 15). Defendant Scarber offered to tear up the disciplinary report if Aguiar agreed not to file the papers. (Doc. 1, pp. 15-16). Aguiar agreed to the deal to avoid going to segregation. Nonetheless, when Aguiar

2

returned to the law library, he completed his petition and letter. (Doc. 1, p. 16). Aguiar printed out the papers for mailing, and was instructed to report to Lieutenant Poindexter's office. (Doc. 1, p. 16). From there, Aguiar was placed in segregation pending an investigation. (Doc. 1, p. 17).

After Aguiar was instructed to gather his belongings, he was escorted to segregation by Defendants Kitchen and C. Nall. (Doc. 1, p. 18). Aguiar's papers were placed in a tote bag, which Defendant Kitchen placed on Aguiar's shoulder. (Doc. 1, p. 18). Aguiar informed Defendant Kitchen that he had some important legal papers in the bag. (Doc. 1, p. 19). Aguiar claims he had two huge folders filled with several inches of papers. (Doc. 1, p. 19). However, when Defendant Kitchen filled out an inventory form a few days later, he listed only one inch of paperwork. (Doc. 1, p. 19). Aguiar complains that Defendant Kitchen either failed to properly secure his legal documents, or put false information on the form in order to conceal the fact that he destroyed the papers. (Doc. 1, p. 19).

Aguiar received an incident report, and admitted the violation. (Doc. 1, p. 17). Aguiar's disciplinary hearing was conducted on August 29, 2017. (Doc. 1, p. 18).

Aguiar complains that Lieutenant Hamilton violated a prison policy that allows inmates to retain certain items in segregation. (Doc. 1, pp. 24-25). Defendant Hamilton told Aguiar he would get his personal property after it had been inventoried. (Doc. 1, p. 25). Aguiar claims this was a lie to "keep Aguiar from complaining and making a commotion." (Doc. 1, p. 25). Aguiar complains that, after three weeks of complaining, the property officer finally showed up with some of

Aguiar's property. However, the legal papers, an address book, and postage stamps were allegedly missing. (Doc. 1, p. 26).

Aguiar alleges that Mr. Futrell was the SHU property officer that received Aguiar's legal papers and personal property. Aguiar claims Defendant Futrell allowed or assisted other staff members in obtaining and destroying the legal documents. (Doc. 1, p. 28). Defendant Futrell informed Aguiar that he had been instructed to bring Aguiar's property to the Lieutenant's office. (Doc. 1, p. 30). Defendant Futrell allegedly told Aguiar that his documents had not been destroyed. However, the documents were never provided to Aguiar. (Doc. 1, p. 30).

Aguiar alleges that SIA Jackson gave orders to all SHU officers not to provide Aguiar with information about his status in segregation or his personal property. (Doc. 1, p. 35). Aguiar also alleges that SIA Jackson made a request to have Aguiar transferred to the counter-terrorism unit—a request that was denied. (Doc. 1, p. 35).

Aguiar claims that, while in segregation, his requests for grievance forms, phone calls to his attorney, information concerning the missing documents, and his complaints about a lack of access to the law library were all ignored. (Doc. 1, p. 36). Aguiar specifically claims that his correctional counselor, Mr. Hodges, was responsible for providing him with grievance forms, legal calls, and a copy of his inmate contact list. Defendant Hodges told Aguiar that all requests had to be handled by the special investigation department. Aguiar concludes that Defendant Hodges intended to frustrate Aguiar's attempts at filing grievances, and to prevent creating a record of the theft and destruction of his legal papers. (Doc. 1, p. 39).

Aguiar alleges that his case manager, J. Ray, did not visit him while in segregation. (Doc. 1, p. 40). Aguiar complains that Defendant Ray did not respond to Aguiar's request for an inmate account statement. (Doc. 1, p. 40). Thus, Aguiar concludes that Defendant Ray hindered his access to the courts. (Doc. 1, p. 40).

Aguiar claims that Unit Manager Cordova admitted that he ordered Defendant Hodges to deprive Aguiar of grievance forms, photocopies, and legal calls. (Doc. 1, p. 41). Defendant Cordova informed Aguiar that he received an order from the warden that all matters related to Aguiar were to be handled by the special investigations department. (Doc. 1, p. 41). Defendant Cordova also admitted to Aguiar that he sent the request to have Aguiar moved to the counter-terrorism unit. (Doc. 1, p. 41).

Aguiar alleges that he received a sanction of 30 days in segregation for his disciplinary violation. (Doc. 1, p. 43). Aguiar complains that a transfer was not part of his sanction, yet he learned that he was being transferred out of USP-Pollock. (Doc. 1, p. 45). Aguiar asked Lt. Odhiambo to allow him to place a call to the BOP's internal affairs office to inform them of the obstruction of justice at USP-Pollock. Aguiar claims that Defendant Odhiambo denied the request in violation of BOP policy and Aguiar's constitutional rights. (Doc.1, p. 45).

Warden Stancil admitted to Aguiar that he was responsible for the request to transfer Aguiar to the counter-terrorism unit. (Doc. 1, p. 46). Defendant Stancil allegedly placed Aguiar on restricted communication status for security reasons. (Doc. 1, p. 46). According to Aguiar, Defendant Stancil admitted his staff took the missing papers and said they would not destroy them. "They may have simply lost

them." (Doc. 1, p. 47). Aguiar states that Defendant Stancil advised Aguiar to file a tort claim if the papers did not show up. (Doc. 1, p. 48).

II. Law and Analysis

    A. Aguiar's complaint is subject to screening under §§ 1915(e)(2) and 1915A.

Aguiar is an inmate who has been allowed to proceed *in forma pauperis*. (Doc. 7). As a prisoner seeking redress from an officer or employee of a governmental entity, Aguiar's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. See Martin v. Scott, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, Aguiar's complaint is also subject to screening under § 1915(e)(2). Both §§ 1915(e)(2)(B) and 1915A(b) provide for s*ua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id. at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).

    B. Aguiar fails to state an access-to-courts claim.

Aguiar complains that Defendants denied him access to the courts by losing or destroying his legal documents and placing him in segregation. Prisoners have a

6

constitutional right of access to the courts. See Brewer v. Wilkinson, 3 F.3d 816, 820-21 (5th Cir. 1993). The right is not unlimited, however, and includes only a reasonable opportunity to file non-frivolous legal claims challenging the prisoner's convictions or conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 351 (1996). Thus, in order to state a claim that he was denied the right of access, a plaintiff must demonstrate that his position as a litigant was actually prejudiced. See Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996) (per curiam) (citing Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993)). The requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." Lewis, 518 U.S. at 354. Instead, a plaintiff must, at the very least, show that he was prevented from filing a non-frivolous pleading.

Aguiar cannot show that he has been prevented from filing any non-frivolous pleading. He alleges he was prevented from filing a suit he drafted against the Department of Justice ("DOJ") when his materials were confiscated and he was placed in segregation for a disciplinary violation. First, Aguiar could have re-written and submitted the lawsuit. Regardless, Aguiar's intended suit against the Department of Justice would have been barred by sovereign immunity. See Smart v. Holder, 368 F. App'x 591, 593 (5th Cir. 2010); Gibson v. Federal Bureau of Prisons, 121 F. App'x 549, 551 (5th Cir. 2004); Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 333 n.8 (5th Cir. 2002).

Moreover, the substance of Aguiar's suit against the DOJ was that staff members at USP-Pollock were allegedly obstructing justice. "Obstruction of justice

in federal litigation ordinarily involves federal criminal charges being filed against someone." Prude v. Thaler, 9:12-CV-39, 2012 WL 3564226, at *3 (E.D. Tex. Aug. 16, 2012) (citing United States v. Ramos, 537 F.3d 439, 460–61 (5th Cir. 2008)). "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). Aguiar could not bring criminal charges against the Defendants in his proposed civil suit.

An obstruction of justice claim may possibly be raised under 42 U.S.C. § 1985(2). However, that provision concerns two or more persons conspiring "to deter, by force, intimidation, or threat, any party or witness in any court of the United States." Prude v. Thaler, 2012 WL 3564226, at *4. The facts alleged by Aguiar do not indicate he intended to file suit against the DOJ for threatening a party, witness, or juror from attending or testifying in any court of the United States. See id. (citing Garrison v. City of Texarkana, Texas, 910 F. Supp. 1196, 1205 (5th Cir. 1995)). The statute also includes a provision concerning denial of equal protection, but "pro se plaintiffs are not a class protected by Section 1985(2)'s prohibition of obstruction of justice." Id. (citing Freeman v. Texas, No. H–08–2050, 2008 WL 4155346 (S.D. Tex. Sept. 2, 2008)).

Because Aguiar cannot show he was prevented from filing a non-frivolous legal pleading or that his position as a litigant was actually prejudiced, he cannot establish an access-to-courts violation.

C. <u>Aguiar fails to state a claim for lost or stolen property.</u>

Aguiar complains that Defendants lost or destroyed his legal documents, postage stamps, and an address book when he was placed in disciplinary segregation. (Doc. 1, p. 26). In <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981) (overruled in part on other grounds) and <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984), known collectively as the "Parratt/Hudson Doctrine," the Supreme Court found that a random and unauthorized deprivation of a property or liberty interest does not violate procedural due process if the state furnishes an adequate post-deprivation remedy. <u>See</u> <u>Caine v. Hardy</u>, 943 F.2d 1406, 1412 (5th Cir. 1991). Although <u>Hudson</u> and <u>Parratt</u> apply on their face to state prison officials, the Fifth Circuit has extended this holding to federal prisoners. <u>See</u> <u>Sun v. U.S.</u>, 49 F.3d 728 (5th Cir. 1995).

Aguiar cannot show the absence of an adequate post-deprivation remedy. Along with the administrative process of the Federal Bureau of Prisons, 31 U.S.C. § 3724 allows the Attorney General of the United States to settle claims for "personal injury, death, or damage to, or loss of, privately owned property, caused by an investigative or law enforcement officer as defined in section 2680(h) of Title 28 who is employed by the Department of Justice acting within the scope of employment that may not be settled under chapter 171 of Title 28 [i.e. the Federal Tort Claims Act]." 31 U.S.C. § 3724. In fact, Aguiar states that Defendant Stancil advised Aguiar to file a tort claim if the papers did not show up. (Doc. 1, p. 48).

Other courts have also held that 31 U.S.C. § 3724 represents an adequate post-deprivation remedy for federal prisoners complaining of deprivation of personal

9

property. See Marulanda v. U.S. Marshals Service, 467 F. Appx 590 (9th Cir. 2012) (holding that Congress has provided an adequate post-deprivation remedy for the unauthorized acts of a federal employee, citing 31 U.S.C. § 3724(a), so Plaintiff had no claim for the destruction of his property under Hudson); Salter v. Nickerson, No. 5:12-CV-22, 2013 WL 866198, at *1 (E.D. Tex. Jan. 25, 2013), report and recommendation adopted, 2013 WL 866475 (E.D. Tex. Mar. 7, 2013); Bonneau v. Maxwell, 2012 WL 3644140 (D. Or., August 23, 2012) (31 U.S.C. § 3724 foreclosed Bivens claim for destruction of property by government officials). Therefore, to the extent that Aguiar complains of the loss of his property as a due process violation, his claim is foreclosed by Parratt and Hudson.

### D. Aguiar cannot state a claim for placement in segregation or retaliation.

To the extent Aguiar claims he was placed in segregation in retaliation for drafting a suit, his claim fails. To state a claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing McDonald v. Stewart, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. See Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" Jones, 188 F.3d at 325 (citations omitted).

Aguiar was placed in segregation for violating a prison rule that prohibits inmates from mailing a letter through a third party. (Doc. 1, p. 15). Aguiar states that he admitted his guilt. (Doc. 1, pp. 17-18). Aguiar's claim that he was segregated in retaliation is belied by his admission of guilt. Aguiar has not alleged—nor can he prove—causation or Defendant's intent to retaliate against Aguiar.

### E. Aguiar fails to state a claim for the denial of grievance forms.

Aguiar complains that, while in segregation, his requests for grievance forms were ignored. Inmates have no constitutional right to receive grievance forms or to have grievances resolved to their satisfaction. This is because a prisoner has a liberty interest only in "freedom from restraints imposing atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995); see also Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005) (prisoner does not have a federally protected interest in having grievances investigated or resolved to satisfaction).

### F. Aguiar fails to state a claim regarding his housing assignment.

To the extent Aguiar complains that Defendants requested he be transferred to a counter-terrorism unit, Aguiar fails to sate a constitutional claim. The request was denied, and Aguiar was not transferred to the counter-terrorism unit. (Doc. 1, p. 35).

To the extent Aguiar complains he was transferred from USP-Pollock to USP-Victorville, he fails to state a constitutional claim. The Due Process Clause does not

11

provide prisoners with a protected liberty interest in being housed in a particular facility. See Yates v. Stalder, 217 F.3d 332, 334 (5th Cir. 2000).

### G. Aguiar fails to state a claim for the violation of BOP or prison policy.

Aguiar claims that Defendants violated prison policy when he was in segregation by not allowing Aguiar to possess certain items, and by not allowing Aguiar to contact BOP's internal affairs office to inform them of obstruction of justice at USP-Pollock. A violation of a prison regulation, without more, does not state a claim for a constitutional violation. See Gibson v. Fed. Bureau of Prisons, 121 F. App'x 549, 551 (5th Cir. 2004) (citing Edwards v. Johnson, 209 F.3d 772, 779 (5th Cir. 2000)).

### III. Conclusion

For the foregoing reasons, IT IS RECOMMENDED that Aguiar's complaint be DENIED and DISMISSED WITH PREJUDICE under §§ 1915(e)(2)(B) and 1915A.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have 14 calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within 14 days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within 14 days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __6th__ day of July, 2018.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge